**People of the State of Illinois, Plaintiff-Appellee, v. Harry Scott and Leon Walker, Defendants-Appellants.**

Gen. Nos. 51,096, 51,097.

First District, Third Division.

October 10, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (James N. Gramenos and James J. Doherty, Assistant Public Defenders, of counsel), for appellants.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Joel M. Flaum, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

Harry Scott and Leon Walker were found guilty of burglary and sentenced to the penitentiary. Trial errors compel a reversal of their conviction.

Police officers, who were investigating a number of burglaries which had taken place on the north side of Chicago, arrested Dale McKinney and James Thompson on March 20, 1965, at 3:30 in the morning in the 5400 block of North Kenmore Avenue. McKinney and Thompson, who lived on the south side of Chicago, were questioned. McKinney gave the officers information which led to the arrest of Scott and Walker later the same morning in their south side homes. The officers went to Scott's home and then to Walker's. Walker lived in a small, two-room apartment and was in bed when the police arrived. On the dresser near his bed was a motor vehicle operator's license bearing the name of Barbara Jean Campbell, 5417 North Kenmore Avenue. Next to the license was a lady's purse. Walker said he knew nothing about the license or the purse, and a woman who was in the apartment said they were not hers.

Fifteen minutes after Walker's arrest the officers learned through police sources that the home of Mrs. Campbell had been burglarized on the early morning of March 19th. They brought Mrs. Campbell to their headquarters where she identified the purse as hers and picked Scott out of a lineup as the burglar who awakened her in her home at 3:40 a. m. Walker had been placed in the lineup but McKinney and Thompson had not. In fact, McKinney and Thompson were released before the lineup was held.

Scott and Walker were tried for the Campbell burglary. The case against Scott rested on his identification by Mrs. Campbell, and the case against Walker rested on her property being found in his home and on an oral statement

475

made by him admitting his participation in the burglary. Walker denied making the statement.

McKinney was Walker's friend and frequently slept at his apartment. It was the defendants' contention that McKinney was the one who burglarized the Campbell home and that he shifted the blame on them in order to exculpate himself. They presented witnesses who said they saw Mrs. Campbell's purse in McKinney's possession on the morning of March 19th. One of these witnesses, a man who shared the same apartment with Walker, testified that before he left for work at 7 a. m. on March 19th McKinney came there with the purse, put it on the dresser and then lay down on the couch.

 In his opening statement to the jury a defense attorney said that he intended to prove that McKinney and his companion were burglars, that they had burglar tools on them when arrested and that whatever McKinney told the police was for the purpose of avoiding punishment. Despite this theory of the defense, the court early in the trial improperly limited the cross-examination of the State's witnesses as to McKinney and twice admonished the jury to disregard any testimony referring to him. As the trial progressed the court relaxed its restriction and permitted the defendants more latitude in developing their theory of the case. At no time, however, did the court revise its prior instruction and even late in the trial, when McKinney testified for the State in rebuttal and denied involvement in the Campbell burglary, his cross-examination was restricted.

Another serious error was the injection into the case of testimony concerning other burglaries supposedly committed by the defendants. Both the prosecution and the defense were guilty of this and each blames the other for starting it. A review of the record shows that the subject was first opened by a witness for the State—a police officer who volunteered on cross-examination that he did not know about the Campbell burglary at the time he ar-

476

rested Scott and Walker. The inference from this was that they had been arrested for a crime or crimes other than the one for which they were being tried. The prosecution saw to it that this implication was not overlooked. On redirect examination the assistant State's attorney asked the following questions and the officer made the following answers:

"Q. This information that you testified to on cross-examination, Detective, that was given to you by McKinney. Was this regarding a burglary?
"A. Burglaries.
"Q. Is this why you went to the south side and arrested these gentlemen?
"A. Yes.
"Q. Because of information regarding a burglary?
"A. Burglaries."

Implication gave way to declaration when a second police officer testified for the State. On direct examination he stated that he questioned Walker relative to numerous burglaries that had taken place in a particular area on the north side and that Walker replied:

". . . that he had gone up there several times, on various occasions, for the purpose of committing burglaries. . . . He related that one of them had transpired within the last two days. However, . . . he refused to continue any further until after he had been viewed by the complainants in these cases."

On redirect examination the officer said that McKinney gave him specific information about locations involving both Walker and Scott and that Walker corroborated McKinney's information. On recross examination Scott's attorney asked him if McKinney had said that Walker and Scott were responsible for the Campbell burglary. The officer answered: "No, he told us they were responsible for numerous burglaries up there." Walker's attorney

477

brought out that the only charge placed against him was the Campbell burglary. The prosecutor then asked if other charges might be brought against the two defendants and the officer answered that this was possible.

These are but a few instances of the many references made to other crimes by both the State and the defense. The issue at the trial became distorted and the court finally tried to rectify the situation. As the State's case neared its end, the court told the jury that the attorneys had brought other burglaries into the case, that these burglaries were not being tried and that the jury was to be concerned only with the burglary on trial. But the court's warning came much too late. By this time the damage had been done and was beyond repair.

The Assistant State's attorney also realized the prejudicial nature of the evidence. During his closing argument he blamed the defense for introducing evidence of other crimes by its "continued questioning regarding McKinney" and said if the State had brought it out it would have been reversible error. Four times in his argument he cautioned the jury not to consider the testimony about other burglaries. He did not refrain, however, from detailing certain phases of the damaging testimony before asking the jurors to disregard all such evidence. He reminded them that a police officer testified that ". . . Walker sat down and listed the dates of the burglaries he had committed . . ." and also that Walker's conduct was ". . . an admission on his part of various burglaries on the north side. . . ."

█ █ The general rule is that evidence of the commission of other crimes by an accused is inadmissible unless it is relevant to establish identity, intent, knowledge, motive, a common scheme or design or a fact material to the issue on trial. People v. Cage, 34 Ill2d 530, 216 NE2d 805 (1966); People v. Tranowski, 20 Ill2d 11, 169 NE2d 347 (1960); People v. Scott, 82 Ill App2d 109, 227 NE2d 72 (1967). None of these exceptions to the general rule

478

was pertinent in the present case. The testimony of the defendants' involvement in other burglaries was reversible error; the State cannot escape responsibility for the major share of the error just because the defense was also to blame.

The defendants' arrest for crimes disassociated with the one on trial, the information from McKinney which brought about their arrest and their theory concerning him made this a difficult case to try without error creeping in. But error on the doorstep need not be invited inside and entertained. A conference prior to the next trial where ground rules can be laid out might be helpful, as would careful preparation and skillful trial technique by the attorneys.

■ ■ We also suggest that the defendants be tried separately if the State again intends to use Walker's oral statement. As related by the police, Walker's statement detailed the principal role played by Scott in the Campbell burglary. It was neither made in Scott's presence nor assented to by him and, despite warnings by the court that it should be considered only as to Walker (as was done in the instant case), its use would be prejudicial error. Bruton v. United States, 391 US 123 (1968); Roberts v. Russell, 392 US 293 (1968). See too, People v. Barbaro, 395 Ill 264, 69 NE2d 692 (1946). The error in the present case from the use of Walker's statement inculpating Scott is not raised on appeal but this was a plain error of which we take notice (Ill Rev Stats 1967, c 110A, § 615(a)) and is an additional reason why Scott's conviction must be reversed. The fact that Walker took the stand and that Scott had an opportunity to cross-examine him did not mitigate the error. Walker denied making the incriminating statement; confrontation was therefore meaningless and cross-examination would have been futile.

Because a new trial is in order, we need not comment on other alleged errors save one. Before the trial Walker

filed a motion to suppress the evidence found in his apartment. A hearing was held and the motion was denied. Walker contends the motion should have been granted.

The arrest of Walker and the search of his apartment were made without a warrant. A police officer may make an arrest without a warrant if he has reasonable ground to believe that the person arrested has committed a criminal offense. People v. Asey, 85 Ill App2d 210, 229 NE2d 368 (1967). He may make a reasonable search without a warrant if it is incident to a lawful arrest. People v. Brinn, 32 Ill2d 232, 204 NE2d 724 (1965). An informer's tip may provide the ground for an arrest without a warrant if the officer has reason for placing reliance on the information received. People v. Truelock, 35 Ill2d 189, 220 NE2d 187 (1966).

The reliability of McKinney depended upon the circumstances under which he came into the hands of the police and the content of his information. He was unknown to the police previous to his arrest and his information was not independently corroborated except that Scott was found at the address given by him before Walker was arrested. At the hearing on the motion the officers did not relate fully what McKinney told them and did not describe all the underlying circumstances from which they concluded that his information was reliable. Despite this deficiency, enough evidence was introduced so that the court could determine that the officers had reasonable ground to believe that he was telling the truth. He knew Scott and Walker, told where they could be found and said they had been out on a burglary within the last two days in the area under investigation. There was a credible motive for his revelation—obtaining leniency in his own predicament; a credible reason for his knowledge—his association with those he accused, and credible support for his accusation—the commission of a particular burglary in the neighborhood where a

480

series of burglaries had occurred. Cf.: People v. McKee, 39 Ill2d 265, 235 NE2d 625 (1968). There was probable cause for believing that Walker had committed a criminal offense; his arrest was not unlawful and the seizure of the articles in open view upon his dresser was not illegal. People v. Barbee, 35 Ill2d 407, 220 NE2d 401 (1966); People v. Peak, 29 Ill2d 343, 194 NE2d 322 (1963); People v. Durr, 28 Ill2d 308, 192 NE2d 379 (1963); Polk v. United States, 314 F2d 837 (1963); Ellison v. United States, 206 F2d 476 (1953).

The judgments are reversed and the cause remanded.

Reversed and remanded.

SCHWARTZ and SULLIVAN, JJ., concur.