THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN E. BRUNNING, Defendant-Appellant.

First District (2nd Division)    No. 80-373

Opinion filed April 21, 1981.

DOWNING, J., specially concurring.

James J. Doherty, Public Defender, of Chicago (James L. Rubens, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Joel A. Stein, and Frank Castiglione, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Defendant, John Brunning, was indicted for rape, deviate sexual assault, aggravated kidnapping and armed violence. A jury acquitted him on the charges of kidnapping and armed violence but found him guilty of rape and deviate sexual assault. He was sentenced to concurrent terms of 15 years in the penitentiary with 3 years' mandatory supervised release. The issues raised on appeal are whether: the State proved beyond a reasonable doubt that the sexual acts were performed by force and against the will of the prosecutrix; and the trial court committed reversible error in admitting testimony of a prior arrest of defendant for the purpose of impeaching his credibility.

The prosecutrix testified that on Saturday, August 26, 1978, she was an airline flight attendant, but was dressed in civilian clothes. As she approached her car in the O'Hare Airport parking lot at about 6 a.m., defendant asked her for a ride. When she refused, defendant pointed a gun at her and said, "Get in the car, don't try any funny stuff or I'll kill you." She got in, moved to the passenger's side and defendant drove. She offered him money and the car and pleaded with him to leave her alone. Defendant asked her for the parking lot ticket and drove to the toll booth. Upon leaving O'Hare, defendant drove to a factory area and parked the car. He put the gun under the driver's seat. Defendant put his arm around the prosecutrix and pulled her toward him and started kissing her; she begged him to leave her alone and told him she had a husband. But defendant lifted her blouse out of her skirt and fondled her, then lifted her skirt, pulled down her pantyhose and underwear and put his mouth on her vagina. Thereafter he had sexual intercourse with her. Defendant then drove to a residential area and, before leaving the car, picked up her purse and demanded her name and address, which she gave him. He told her that she would be hearing from him.

Afterward, the prosecutrix drove into Chicago to her apartment building, went to a friend's apartment and told her what had happened. The friend convinced her to call the police who took them to the hospital. Defendant called two days later to make a date to meet the prosecutrix at a tavern. She accepted at the direction of a police investigator. During the conversation defendant gave her two telephone numbers at which he could be reached in case she could not meet him. Following his arrest, the prosecutrix identified him in a police lineup.

On cross-examination, the prosecutrix testified that even before defendant pulled a gun in the parking lot his whole manner terrified her, but she did not call for help or return to the airport terminal. When defendant paid for the parking at the toll booth he had the gun tucked into his belt. When defendant kissed her, she kissed him back because she

was forced to. After defendant had left her at Belmont Avenue in Franklin Park, she did not drive to a police station or hospital, or stop a police vehicle on the way, but went to a girlfriend's apartment in the same building where she lived.

The girlfriend to whose apartment the prosecutrix had gone after the attack testified that the prosecutrix was disheveled, her face was blotchy and her whole body was trembling when she arrived. She reported that she had been raped.

Officer Frank T. Cosgrove responded to a call to assist a rape victim and, upon arrival at the apartment to which he was directed, he found the prosecutrix and her friend there. He described the prosecutrix as trembling, her voice cracking and having trouble explaining. A microscopic examination of specimens taken from her vaginal swabs revealed the presence of spermatozoa.

Defendant testified he lived near Belmont Avenue in Franklin Park. On the morning in question, he worked until 2 a.m. at a tavern, then went to drink and eat with several of the tavern patrons. When his car became disabled on the way home, he hitchhiked to O'Hare Airport to get a taxi. He saw the prosecutrix and offered to pay her parking fee in exchange for a ride. When she told him she was unfamiliar with the area, he drove. Because nearby service stations were closed due to the early hour, they sat and talked. Defendant concluded that she seemed overly responsive to his questions about her job and husband. When defendant kissed her, she put her arms around him and returned the kiss. They then started to make love, and she did not resist. Afterward he drove to the corner near his house and asked if he could see her again. She gave him her name, address and telephone number. He denied having forced the prosecutrix into having oral sex or intercourse with him, or that he used a gun or other weapon, or that he owned a gun or other weapon. On cross-examination defendant denied that he ever owned or possessed a gun.

Over defendant's objection, the court allowed the State to call as a rebuttal witness Officer Thomas Bridges who testified that he arrested defendant for possession of a gun in August of 1977. The officer related extensive details of the arrest, depicting how he stopped a car driven by defendant. At that time defendant made a sudden move to the floor of the vehicle with his right hand, and the officer pointed his revolver at defendant, ordered him to put his hands on the dashboard, and then removed defendant from the car. He found a revolver on the floor directly underneath where defendant had been seated. The State produced this gun marked as a People's exhibit for identification. The officer described and read off the serial number of the gun. He then read a police inventory slip which stated that the revolver and two .38-caliber cartridges had been seized from defendant. On cross-examination the officer

admitted that defendant had been acquitted of the charge of unlawful possession of a weapon.

■■ Although fully aware that defendant had been acquitted of a previous weapon-possession charge, the assistant state's attorney asked defendant whether he possessed a .38-caliber Smith and Wesson on August 10, 1977. The court overruled a defense objection to the question and defendant responded that it was found in his car. The prosecutor pursued the line of questioning, asking "And the gun was under the driver's seat, is that right, sir?" Defendant responded, "I don't recall where they found it, I wasn't there." The cross-examination of defendant regarding the gun found in his car one year before was in itself improper and prejudicial cross-examination because he had not been asked nor had he testified about previous possession of a gun in his testimony in chief. (*People v. Geidras* (1930), 338 Ill. 340, 344, 170 N.E. 219.) Further, where, as here, the defendant testified on his own behalf it is improper to cross-examine him regarding that arrest; even had he been convicted, he may be impeached only through the record of the prior conviction by an authenticated copy thereof. (*People v. Flynn* (1956), 8 Ill. 2d 116, 121, 133 N.E.2d 257.) In *Flynn*, the supreme court emphasized that " '* * * there is no question more damaging to a defendant with a jury than one which suggests or intimates that he is a criminal or has been charged with criminal offenses. Such damage is magnified twofold when it is elicited from a defendant on cross-examination and he is compelled to testify against himself,' " citing *People v. Kosearas* (1951), 408 Ill. 179, 181, 96 N.E.2d 539.

Defendant argues that it was prejudicial and reversible error for the trial court to have admitted Officer Bridges' rebuttal testimony in evidence because it was of no probative value, was prejudicial and denied him a fair trial. The putative rebuttal evidence given by Officer Bridges, based as it was upon the improper cross-examination to which we have referred, should not have been received for two reasons: first, it did not "explain, repel, contradict or disprove" properly admitted defense evidence and, at best, related to a collateral matter (*People v. McGhee* (1974), 20 Ill. App. 3d 915, 922, 314 N.E.2d 313); and, second, it was contrary to the exclusionary rule prohibiting evidence of "other crimes," since it was not relevant to the establishment of motive, common design, identity, intent, knowledge or a fact material to an issue on trial. (*People v. Scott* (1968), 100 Ill. App. 2d 473, 241 N.E.2d 579.) The exclusionary rule extends to evidence of the mere accusation of another crime. *People v. Gleason* (1962), 36 Ill. App. 2d 15, 183 N.E.2d 523.

■■ The combination of defendant's cross-examination concerning his "ever" having possessed a gun, in addition to Officer Bridges' testimony concerning the 1977 arrest, amounted to relitigating the 1977 weapon

possession charge, despite the fact that he had already been acquitted thereof. The doctrine of collateral estoppel, recognized in Illinois criminal proceedings (see collection of authorities in *People v. Borchers* (1977), 67 Ill. 2d 578, 367 N.E.2d 955), was recently applied in *United States v. Keller* (3d Cir. 1980), 624 F.2d 1154, under circumstances similar to those obtaining here, in which the prosecution unsuccessfully sought to utilize for purpose of impeachment evidence which previously led to an acquittal. In our opinion the State here was also collaterally estopped from using evidence relating to the 1977 arrest for possession of a weapon in its attempted impeachment and it was reversible error for the trial court to have permitted its effort to do so. Defendant's credibility concerning possession of a gun in the case *sub judice* was a crucial issue. The parties agree that the sexual acts complained of did occur, leaving to the jury only the determination of whether the prosecutrix' participation was by force or consent. The major testimony suggesting force or threat of force was that of the prosecutrix who testified that defendant pointed a gun at her and threatened to kill her. Defendant denied having then used or possessed a gun. Therefore, the credibility of defendant's denial was a critical element of the jury's determination of whether defendant forced the prosecutrix at gunpoint, or whether she fabricated the presence of a gun and had, in fact, consented to the sexual acts.

Defendant further contends that the State failed to prove beyond a reasonable doubt that the sexual acts were performed by force and against the will of the prosecutrix. Our supreme court mandates that we address this issue, although we reverse the trial court on an evidentiary issue, to avoid the risk of subjecting defendant to double jeopardy. (*People v. Taylor* (1979), 76 Ill. 2d 289, 309, 391 N.E.2d 366.) We find that, as stated above, the question of defendant's use of force or the prosecutrix' consent is sufficiently supported by evidence so as to be deemed a question of fact properly left for a jury to assess, absent the introduction of the improper evidence of defendant's prior arrest.

Accordingly, the judgment is reversed and the cause is remanded for a new trial on the charges of rape and deviate sexual assault.

Reversed and remanded.

STAMOS, J., concurs.

DOWNING, J., specially concurring:
I concur with the result. However, as I read the opinion, I am apprehensive of its overreach. Because I believe it can be interpreted to prevent a proper area of cross-examination, the following explanation is set forth.

The indictment charged defendant with rape by force and against the will of the prosecutrix, and armed violence, in that the defendant used a handgun in committing the rape.

During opening statements defendant's counsel said: "As to the charged of armed violence, not guilty, because there was no weapon on Mr. Brunning, had none at the time nor at any—nor at any later time, nor at any time. And, therefore, is not guilty of that charge." Now, it is recognized that opening statements do not constitute evidence, but the jury was instructed, "Opening statements are made by the attorneys to acquaint you with the facts they expect to prove." Illinois Pattern Jury Instructions, Criminal, No. 1.03 (1968).

The prosecutrix testified the defendant had a very small gun with silver barrel and black handle. The defendant testified on direct examination as follows:

"Q   Mr. Brunning, you heard her allege that you had a handgun with you. Now I asked you several times—strike that.

Let me ask you, was there a handgun in the car?

A   No, there was not.

I take that back. There may have been. If there was, I didn't know about it. We were in her car.

Q   Do you know of any handguns that [prosecutrix][1] may have had?

A   No, I do not.

Q   Did you have a handgun?

A   No, I did not.

Q   Did you bring one in that car with you?

A   No, I did not.

Q   Did you ever point anything at [prosecutrix][1] that looked like a handgun?

A.  No, I did not."

The scenario, at this point, is that the indictment charged the defendant with using a handgun. Defendant's counsel in his opening statement stated the defendant had no weapon, "* * * at the time, nor at any—nor at any later time, *not at any time*." (Emphasis added.)

On cross-examination, the following pertinent testimony was received from defendant:

"Q   He didn't flash a badge at you, Mr. Brunning, and you didn't flash a gun at this woman, is that your testimony?

A   Yes, that is correct.

Q   You didn't have a gun that day, did you?

---

[1] Name omitted.

A  *I don't have a gun at all.*[2]

Q  *Have you ever owned a gun or possessed one?*

A  *No, I have not.*

Q  You do own a Plymouth, a 1967 automobile, is that correct, Mr. Brunning?

A  Yes, sir, that is correct.

❋  ❋  ❋

MR. HADDAD: Q. Mr. Brunning, calling your attention to August 10, 1977, did you have occasion to have possession of a gun on that day, a Smith & Wesson .38?

MR. BARISH: Objection. Improper question.

THE COURT: Overruled.

MR. HADDAD: Q. Did you, sir?

THE WITNESS: A. I don't recall the exact date, but it was found in my car, yes.

Q  That was the Plymouth you were talking about, right, the one that broke down?

A  Yes, that is correct.

Q  And the gun was under the driver's seat, is that right, sir?

A  I don't recall where they found it, I wasn't there.

Q  You don't recall?

A  No.

MR. HADDAD: I have no other questions." (Emphasis added.)

Up to this point, I suggest the questions on cross-examination were proper based on defendant's testimony on direct and on cross-examination. No mention had been made of an arrest. On redirect examination, the following took place:

"Q  Mr. Brunning, that matter was dismissed because it was determined it was not yours, is that correct?

A  Yes, that is correct."

Although it might be argued that defendant's question on redirect "opened the door," I agree that the rebuttal testimony was improper because it related to a collateral matter. See E. Cleary and M. Graham, Handbook of Illinois Evidence §607.2 (3d ed. 1979).

The opinion states, "Further, where as here, the defendant testified on his own behalf it is improper to cross-examine him regarding that arrest; ❋ ❋ ❋." To say it was improper to cross-examine the defendant regarding an arrest is a correct statement of the law. However, there was no reference in the cross-examination to the arrest. Further, I disagree

---

[2] The defendant's answer went beyond the question asked. The next question followed the defendant's answer and no objection was noted to the question.

with the court's opinion if it means that no cross-examination of defendant is permitted on the critical issue of the credibility of the defendant's testimony about a gun. I think, as indicated above, there was a proper area for examination, albeit the State was proceeding on thin ice. But to suggest, as the opinion does, that the defendant cannot be examined about a gun would establish a principle with which I respectfully disagree. There are legal reasons why a person may be carrying a gun. Facts from the incident involving the arrest were referred to, but I believe the defendant opened that door. And up to the point I have set forth above, the jury had not heard of an arrest.

The record in this case is different from the facts in *People v. Flynn* (1956), 8 Ill. 2d 116, 121, 133 N.E.2d 257, cited in the court's opinion. In *Flynn*, the defendants were asked if they had ever been convicted of a felony. Upon admitting this fact, the prosecutor questioned them as to the nature of the prior offense.

I also question whether this record necessitated the application of the doctrine of collateral estoppel. It was not suggested by the defendant nor argued in the briefs before this court. Nor do I think *United States v. Keller* (3d Cir. 1980), 624 F.2d 1154, is persuasive.

To the extent my comments differ from the opinion I disagree. However, I do concur that the judgment should be reversed and remanded.