THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ANTHONY McKINNEY, Defendant-Appellant.

First District (2nd Division)   No. 82—211

Opinion filed August 30, 1983.

Steven Clark, of State Appellate Defender's Office, of Chicago, and Robert E. Senechalle, Jr., of Senechalle & Murray, *pro bono*, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Bruce A. Cardello, and Harry John Devereux, Assistant State's Attorneys, of counsel), for the People.

JUSTICE STAMOS delivered the opinion of the court:

Defendant Anthony McKinney was charged by indictment with murder and armed robbery and a jury convicted him on both counts. Defendant waived his right to a jury at his sentencing hearing. Upon hearing the evidence in aggravation and mitigation, the trial court imposed a sentence of natural life imprisonment after rejecting the death penalty. Defendant then instituted this appeal.

The State's evidence revealed that on September 15, 1978, Donald Lundahl was sitting in his car at 153rd Street near Lexington in Harvey, Illinois, just before 10 p.m. when defendant walked up to the car. Wayne Phillips, who was standing about 50 yards away, testified that defendant approached Lundahl with a shotgun in his hand, pointed the gun at Lundahl and said to him, "Your money or your life." Phillips then heard defendant say, "Well, you just going to have to die." Defendant then fired the shotgun, reached into the car, put something in his pocket, and ran down an alley. Dennis Pettis, who was standing with Phillips at the time of the shooting, was subpoenaed to testify but failed to do so.

Harvey police officer Coleman McCarthy testified that he went to investigate the shooting of Donald Lundahl on September 15, 1978, and saw defendant running down the street. McCarthy placed defendant under arrest. The police report stated only that defendant was standing with the rest of the crowd that had gathered following the shooting.

At the time of defendant's arrest, defendant's brother Michael was also arrested. Both were released the following day.

Officer McCarthy, along with Officer Morrison, arrested defendant again on September 20 at approximately 12:30 a.m. pursuant to an arrest warrant. Defendant was taken to the police station and the

*Miranda* warnings were read to him. After initially denying any involvement in the shooting, defendant admitted to committing the murder and he signed a written confession to that effect. Defendant also admitted to having taken $3 from Lundahl, but that admission came after the signing of the confession and was not included therein.

Defendant's confession was the subject of a pretrial motion to suppress. Defendant contended that he did not receive the *Miranda* warnings, that the confession was physically coerced, and that his request to call his mother was denied. The evidence at the hearing on the motion revealed that the *Miranda* warnings were read to defendant by Officer McCarthy and that defendant read his rights out loud before acknowledging in writing that he understood them. Defendant was also allowed to call his mother when he requested to do so. Defendant's motion to suppress was denied.

At the close of the State's case, defendant's motion for a directed verdict was denied. Following a recess, defense counsel requested leave of the court to call two witnesses who were not included on defendant's witness list. The witnesses were Gwendolyn Pettis, sister of Dennis Pettis, the absent eyewitness, and Robert McKinney, defendant's father. The State opposed allowing either witness to testify. The court allowed McKinney to testify but excluded Pettis. Defense counsel claimed that he had just learned of Pettis' testimony. In a formal offer of proof, Pettis testified as to a conversation she had with her brother and Wayne Phillips, the other eyewitness, in which Phillips said that the police beat them until they agreed to identify defendant as the murderer. The court excluded Pettis from testifying on the grounds that: (1) she was not an occurrence or alibi witness—her only value lay in the impeachment of Wayne Phillips' testimony, and (2) there was no foundation for this impeachment. The defense then presented its case.

The defense called Lena Haller who testified that sometime after 9:30 p.m. on September 15, 1978, defendant ran into her yard at 15329 Lexington in Harvey, Illinois, asking for help. Defendant told Haller that several boys were chasing him. She told defendant to run over to where the police were investigating a shooting. Defendant asserts that he was arrested while running over to the scene of the shooting.

The defense also called defendant's father, Robert McKinney. McKinney testified that he and a friend were at home from 7 to 10:15 p.m. on September 15, 1978, and that defendant was at home with them the entire time.

Defendant also took the stand. He testified that he was running

near the scene of the shooting because he was being chased by a gang of youths. He also claimed that the police beat him until he signed the acknowledgment-of-rights form and the confession.

After the jury returned a guilty verdict, defendant moved for a new trial. The motion was denied. Defendant then waived his right to have a jury pass sentence, and a hearing in aggravation and mitigation was conducted. The court imposed a sentence of natural life after concluding that the death penalty was not warranted. Defendant then appealed.

■ Defendant first contends that the State did not meet its burden of proving that defendant knowingly and intelligently waived his constitutional rights as enunciated in *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, prior to making a confession to the police. This question was for the trial court to decide on the basis of the surrounding facts and circumstances (*People v. Johnson* (1973), 55 Ill. 2d 62, 70, 71, 302 N.E.2d 20) including the defendant's background, experience, and conduct. (See *North Carolina v. Butler* (1979), 441 U.S. 369, 374-75, 60 L.Ed. 2d 286, 293, 99 S. Ct. 1755, 1758.) The court need not be convinced beyond a reasonable doubt in making its decision and its finding will stand unless contrary to the manifest weight of the evidence. *People v. Johnson* (1973), 55 Ill. 2d 62, 70-71, 302 N.E.2d 20.

We note that in the instant case, defendant was 18 years old with an 11th grade education at the time of the confession and that he read out loud and answered in writing the questions on a form entitled "Constitutional Rights of Person in Custody" which included the *Miranda* warnings. Thus, it is evident that defendant was capable of making an intelligent waiver of his rights. Defendant also acknowledged in writing that he was informed of and understood his rights prior to making a confession. Under these circumstances, we find sufficient evidence that defendant knowingly and intelligently waived his rights. See *People v. Brooks* (1972), 51 Ill. 2d 156, 164, 281 N.E.2d 326.

■ Defendant's next contention concerns the trial court's exclusion of a defense witness. At the close of the State's case in chief and following a denial of defendant's motion for a directed verdict, defense counsel requested that he be allowed to call two witnesses who were not included on defendant's witness list as required by Supreme Court Rule 413 (87 Ill. 2d R. 413(d)(i)). The witnesses were Robert McKinney, defendant's father, and Gwendolyn Pettis, sister of Dennis Pettis, the eyewitness who failed to appear at trial. The court allowed Robert to testify but excluded Gwendolyn.

Following the court's ruling, defense counsel called Gwendolyn to testify out of the presence of the jury in a formal offer of proof. In pertinent part, she testified that she spoke with the two eyewitnesses, Wayne Phillips and Dennis Pettis, on September 20, 1978, and Phillips told her that the police had kept them over night and had beaten them and forced them to identify defendant as the man who killed Lundahl. Defendant contends that the court erred by excluding Gwendolyn from testifying.

Supreme Court Rule 413(d)(i) requires that defendant disclose prior to trial a list of the witnesses that defendant intends to call. (87 Ill. 2d R. 413(d)(i).) Failure to comply with this disclosure requirement subjects the defendant to possible sanctions, including the exclusion of the undisclosed witness. (See 87 Ill. 2d R. 415(g)(i).) Exclusion has been held to be a proper sanction where the facts and circumstances justify such action. (*People v. Braxton* (1980), 81 Ill. App. 3d 808, 815, 401 N.E.2d 1062.) Whether or not to impose such a sanction is a matter within the trial court's discretion, and the court's decision will not be disturbed absent a showing by defendant of prejudice or surprise. *People v. Morales* (1982), 109 Ill. App. 3d 183, 189, 440 N.E.2d 302.

In the instant case, defense counsel claimed to have learned of Gwendolyn's testimony during a lunch break following the conclusion of the State's case in chief. Counsel questioned Gwendolyn at her parents' home. He did not explain what prompted him to go to the Pettis' home during the break or how it came about that Gwendolyn suddenly revealed the substance of her proferred testimony. The circumstances surrounding Gwendolyn's revelation strongly suggest recent fabrication (see *People v. Braxton* (1980), 81 Ill. App. 3d 808, 815, 401 N.E.2d 1062), and in light of defense counsel's failure to adequately explain the reasons for seeking Gwendolyn out at such a late date, we find that the trial court did not abuse its discretion by excluding Gwendolyn from testifying.

■ The next contention of error concerns several comments in the prosecution's closing and rebuttal arguments. Defendant contends that these comments contain numerous improper arguments which, taken together, served to deprive him of a fair trial.

Defendant's first objection concerns the following remarks:

"Miss Turkington: Now, Anthony McKinney, and you will take it back with you, has already been convicted of burglary. It is a felony. It involved theft of an automobile. He was given probation. They let him go back on the street.

Mr. Broussard: Objection.

The Court: What is your objection?

Miss Turkington: Now the —

Mr. Broussard: Counsel's improper comment regarding that matter we just spoke about.

Miss Turkington: It was already published, Judge.

The Court: For a limited purpose.

Mr. Broussard: She is exceeding that purpose.

The Court: Miss Turkington, I don't think is going beyond the purpose.

Miss Turkington: Now, he had left burglary and graduated to using a weapon; murder and armed robbery.

Mr. Broussard: Objection, Judge. Objection.

The Court: The Exhibits are certified copies and are for a limited purpose which the jury will be instructed what the limited purpose is, which may I suggest the comments not go beyond that limited purpose.

Miss Turkington: Now, we have an eyewitness and a confession here where he has used a gun to rob. Now I ask you, and I insist upon the fact that you do not convict the Defendant because of his past criminal history. The People of the State of Illinois insist you do not do that. What we ask is you convict him because he has unlawfully murdered Donald Lundahl."

Defendant objects to the prosecution's implication that his prior burglary conviction could be used as substantive evidence of guilt in the instant case. It was indeed improper to imply that the prior conviction could be used as substantive evidence. But the trial court immediately noted that the prior conviction was being admitted for a limited purpose and that the jury would be so instructed. The prosecutor was also quick to admonish the jury that the prior conviction was not to be used as evidence of guilt. Taken together, these comments served to lessen whatever prejudice had been created. (See *People v. Baptist* (1979), 76 Ill. 2d 19, 30, 389 N.E.2d 1200.) Furthermore, the prosecution in rebuttal argument reminded the jury that the defendant's prior conviction went only to his credibility and should not be used as substantive evidence of guilt. The court's instructions to the jury were to the same effect. We find that the prosecution's curative comments and the court's instructions served to alleviate whatever prejudice was created by the prosecution's references to defendant's prior conviction.

Defendant also objects to the prosecution's statement that he "graduated" from burglary to murder and armed robbery. While this comment is somewhat inflammatory, we find that any error created by this statement is harmless beyond a reasonable doubt.

■ Defendant's next objection concerns the prosecution's statement that the eyewitness Wayne Phillips showed courage in testifying because

> "when he took that stand he knew he would have to return to that same home he had left which is within blocks of the McKinney home and many of the McKinneys, of course, are not in custody. None of them other than this one."

Defense counsel objected to the remark concerning defendant's family and the trial court instructed the jury to disregard it. This comment was clearly an improper attempt to bolster the credibility of Wayne Phillips. (See *People v. Bolden* (1978), 59 Ill. App. 3d 441, 453, 375 N.E.2d 898.) But we cannot say that the remarks complained of influenced the jury in a manner that resulted in substantial prejudice to the accused and we therefore find the error created by the comments to be harmless beyond a reasonable doubt. See 59 Ill. App. 3d 441, 451, 375 N.E.2d 898.

■ Defendant next objects to the prosecution's comment that the State had been unable to locate the other eyewitness, Dennis Pettis. It would clearly have been improper if the prosecution had commented on defendant's failure to locate Pettis and call him to testify. (See *People v. Puente* (1981), 98 Ill. App. 3d 936, 948, 424 N.E.2d 775.) But where the State refers to its own failure to locate a witness and does not attribute its failure to defendant, we fail to see any impropriety.

■ Defendant raises three other objections to comments made in the prosecution's closing argument. Defendant failed either to object to these comments or to raise them in his post-trial motion. The objections have therefore been waived. (See *People v. Thomas* (1983), 116 Ill. App. 3d 216, 220.) Although we may elect to review these objections under the plain error rule (87 Ill. 2d R. 615(a)), we decline to do so here. After thoroughly reviewing the record, defendant's assignments of error, and the pertinent case law, we conclude that the evidence is not closely balanced and that the assignments of error are not of such magnitude as to warrant a finding that defendant was denied a fair trial.

■ Defendant next contends that the trial court's imposition of a natural life sentence was excessive.

Defendant waived a jury at his sentencing hearing and the State presented its evidence in aggravation. The evidence revealed that defendant murdered an unarmed victim in furtherance of a robbery and that this crime was committed while defendant was on felony probation. In mitigation, the defense noted that defendant was 21 years

old and undergoing psychological counseling for problems which existed at the time of the murder.

Following the presentation of evidence in aggravation and mitigation, the court stated that the mitigating factors were sufficient to preclude imposition of the death penalty. The cou.t then imposed a sentence of natural life imprisonment. In imposing that sentence, the court noted that the crime was a serious one and that defendant had a prior felony conviction. It also noted that the murder was committed during the course of an armed robbery, and that this fact permitted the imposition of a life sentence. Finally, the court stated that it was not optimistic as to the rehabilitative potential of defendant and that it found no evidence of regret or remorse.

It is apparent that because the murder in this case was committed during the course of an armed robbery, the court was permitted to impose a sentence of natural life. (See Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—1(a)(1)(b); Ill. Rev. Stat. 1981, ch. 38, par. 9—1(b)(6)(c).) It was within the sound discretion of the court whether or not to impose that sentence, and its decision should not be disturbed absent a showing of abuse of discretion. (See *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882.) The court heard evidence in aggravation and mitigation and concluded that rehabilitation was unlikely. It also noted that defendant was a convicted felon and lacked remorse and that the crime was serious. It appears that the trial court did not impose sentence before giving the matter serious consideration. In light of the fact that the court has great discretion in imposing sentence upon even a youthful offender (*People v. House* (1981), 98 Ill. App. 3d 304, 307, 424 N.E.2d 412) and that its decision is due great deference (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882), we cannot conclude that the sentence here was an abuse of discretion.

■ Defendant's final contention is that he was not proven guilty beyond a reasonable doubt.

The State's evidence revealed that an eyewitness saw defendant shoot the victim and that defendant confessed to committing the murder. On appeal defendant contends that the eyewitness' testimony was unbelievable and that the confession was coerced. It was the jury's duty, however, to weigh the credibility of the testimony and resolve the conflicts in the evidence (*People v. Gunderson* (1978), 66 Ill. App. 3d 516, 524, 383 N.E.2d 1296), and unless the entire record leaves the reviewing court with a grave and substantial doubt of guilt, the jury's judgment should stand. 66 Ill. App. 3d 516, 524.

The defense consisted of the testimony of defendant's father, Lena Haller, and defendant. Defendant's father claimed that defend-

ant was at home at the time of the murder. Lena Haller said that defendant was running in the vicinity of the murder scene because he was being chased by a gang of teenagers. Defendant denied committing the murder and robbery and claimed that he was forced to sign the confession. The jury was entitled to believe or disbelieve the testimony of these witnesses and they chose to disbelieve them. See *People v. Adams* (1979), 71 Ill. App. 3d 70, 74, 388 N.E.2d 1362.

It is apparent that the evidence in this case was merely conflicting. Under these circumstances, the jury's verdict should stand. See *People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313.

For the reasons expressed herein, the judgment of the circuit court is affirmed.

Affirmed.

PERLIN and HARTMAN, JJ., concur.