THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID KING, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LOUIS ROBERSON, Defendant-Appellant.

Second District   Nos. 84—0724, 84—0725 cons.

Opinion filed December 10, 1985.

G. Joseph Weller and Paul J. Glaser, both of State Appellate Defender's Office, of Elgin, for appellants.

Fred L. Foreman, State's Attorney, of Waukegan (Phyllis J. Perko and Marshall Stevens, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

Defendants, David King and Louis Roberson, were jointly tried and found guilty in a jury trial of attempted murder (Ill. Rev. Stat. 1983, ch. 38, par. 8—4(a)), aggravated battery (Ill. Rev. Stat. 1983, ch. 38, par. 12—4(b)(1)), conspiracy to commit robbery (Ill. Rev. Stat. 1983, ch.

38, par. 8—2(a)), and attempted armed robbery (Ill. Rev. Stat. 1983, ch. 38, par. 8—4(a)). Each defendant was sentenced to concurrent extended terms of 50 years' imprisonment for attempted murder and 14 years' imprisonment for conspiracy. Judgment was not entered on the guilty verdicts for aggravated battery and attempted armed robbery. The defendants' appeals were consolidated in this court.

Four issues are presented for our review: (1) that the trial court committed several evidentiary errors, (2) that the failure to disclose evidence favorable to defendants was a violation of due process and fundamental fairness, (3) that the imposition of the 50-year extended term of imprisonment for attempted murder was excessive, and (4) that the imposition of an extended term of imprisonment for conspiracy to commit robbery was improper.

The relevant trial testimony shows that on the afternoon of January 8, 1984, the victim, Nelson Lee, while accompanied by his wife Velma, was shot in the forehead and side by a gunman who entered his car while he was near a school. The Lees stated they were there to pick up a nephew, Timothy Walker. The Lees were unable to identify the gunman or another person who was with him and who repeatedly told the gunman to kill Lee. Both denied that Nelson Lee was there to sell Valium.

Jerry Handford, an accomplice, testifying pursuant to a plea agreement with the State which involved dismissal of a charge in connection with this case and reduction of an unrelated offense, stated that he, King, and Roberson planned to rob Lee of Valium which Handford had arranged to purchase from Lee through Timothy Walker. After Handford and Walker had approached the Lee vehicle, King approached and entered the vehicle, pulled a gun, and announced this was a stickup. Nelson Lee fought for the gun while Roberson was outside the car holding Walker. Handford heard three shots and saw the vehicle then speed off.

Timothy Walker testified that he arranged for Handford to purchase Valium from Nelson Lee. As Handford was about to purchase the Valium, the defendants, whom he knew, walked up to the car. King took out a gun, got into the car, and fought with Lee. Roberson was holding Walker and then told King to shoot Lee. Several shots were fired and, as the Lee vehicle was being driven off, King shot twice at the car.

Both defendants denied any involvement in the incident and presented alibi witnesses that they each were at different places at the time in question.

I

■ Three evidentiary trial errors are claimed which we review separately. First, defendant King contends that the court below erred when it refused to allow defendant, near the end of the State's case in chief, to amend his previous discovery answer adding defendant's brother, Will King, to his list of witnesses and ruled King could not be called as a witness. No offer of proof was made indicating the nature of his testimony, and trial counsel admitted that his failure originally to list King as a witness was due to inadvertence. This claim of error was not contained in defendant's written post-trial motion and is waived. (*People v. Wright* (1985), 111 Ill. 2d 128, 148.) Despite defendant's agreement that his general assertion of a denial of due process in his post-trial motion was sufficient to preserve the issue (see *People v. Rayford* (1976), 43 Ill. App. 3d 283, 285-86, 356 N.E.2d 1274), specific references to a claimed trial error in a post-trial motion are required. (See *People v. Jackson* (1981), 84 Ill. 2d 350, 359, 418 N.E.2d 739; *People v. Winston* (1982), 106 Ill. App. 3d 673, 685-86, 435 N.E.2d 1327.) We will, however, review the alleged error pursuant to Supreme Court Rule 615(a) (87 Ill. 2d R. 615(a)).

■ Failure of a defendant to comply with a discovery order subjects him to possible sanctions, including the exclusion of an undisclosed witness. (87 Ill. 2d Rules 415(g), (i).) Whether or not to impose a sanction is within the trial court's discretion and will not be disturbed on review absent a showing by defendant of prejudice or surprise. (*People v. McKinney* (1983), 117 Ill. App. 3d 591, 596, 453 N.E.2d 926.) Here, no showing was offered below as to the nature of the proposed testimony of the witness which might arguably support a claim of prejudice. While defendant now contends in his brief that Will King would have testified in corroboration of his brother's alibi, this argument is speculative and, even assuming it is accurate, would only have resulted in cumulative evidence of an alibi. (See *People v. Bartall* (1983), 98 Ill. 2d 294, 318-20, 456 N.E.2d 59; *People v. Brown* (1980), 89 Ill. App. 3d 852, 858-59, 412 N.E.2d 580.) On this record, there is no reason to invoke the doctrine of plain error encompassed by Rule 615(a) (87 Ill. 2d R. 615(a)).

The second assertion of evidentiary trial error pertains to the defendant Roberson. He argues that the trial court erred by refusing to allow him to present two witnesses, one of them the codefendant King's brother, who would have testified that they purchased Valium and marijuana on numerous occasions in the past two or three years from the victim, Nelson Lee, who was a "drug dealer." He further maintains that the purpose of this testimony was to reveal Lee's status

as a drug dealer which would show Lee's, Walker's, and Handford's motive to testify falsely to this occurrence.

■ The test of the admissibility of evidence is whether it fairly tends to prove the offense charged; and whether what is offered as evidence will be admitted or excluded depends upon whether it tends to make the question of guilt more or less probable. (*People v. Ward* (1984), 101 Ill. 2d 443, 455, 463 N.E.2d 696.) The admission of evidence is within the sound discretion of the trial court, and its ruling should not be reversed absent a clear showing of abuse of that discretion. (101 Ill. 2d 443, 456, 463 N.E.2d 696.) In the instant case, the proffered testimony pertained to drug sales by Nelson Lee to two persons other than the defendant occurring over a two- or three-year period. This evidence was both too remote in time to have any probative value (see *People v. Reese* (1984), 121 Ill. App. 3d 977, 988, 460 N.E.2d 446) and without any connection to the defendant Roberson which might show bias or a motive to testify falsely. In the context of the alibi defense raised, the lack of evidence of any prior association between Lee and Roberson and the inability of Lee to identify Roberson, the testimony of Lee's prior drug sales to other persons did not tend to make the question of Roberson's guilt more or less probable and was therefore properly excluded as not relevant. In addition, there is other evidence in the record to establish that on this occasion Lee was at the school to sell Valium which Roberson could assert as an arguable inference of a motive to give false testimony. We find no abuse of discretion.

■ The third contention of evidentiary error is raised by both defendants and involves the prosecutor's two questions on cross-examination of LaVergne Kneeland, an alibi witness for Roberson, concerning her romantic relationship with Roberson, which she denied. She later admitted that she had visited Roberson on seven occasions while he was in jail. While the State improperly failed to substantiate any romantic involvement (see *People v. Giangrande* (1981), 101 Ill. App. 3d 397, 404-05, 428 N.E.2d 503), we view the error to be harmless. On this record, a friendship between Roberson and the witness was shown supporting an inference of bias to her testimony. Any error in the further unsupported suggestion of a romantic relationship was insignificant. Where the record affirmatively shows an evidentiary error was not prejudicial, it will be labeled harmless. *People v. Carlson* (1982), 92 Ill. 2d 440, 449, 442 N.E.2d 504.

## II

The defendants next contend that the State's failure to inform them of its witness', Jerry Handford's, alleged involvement in a sexual

assault while in the county jail and that the State was not prosecuting him for that offense amounted to a "violation of the principles of due process and fundamental fairness." They argue that the defendants discovered this after the trial, and these facts create a strong inference that the State's failure to prosecute Handford for this offense was part of a plea agreement and should have been disclosed to the jury along with the other evidence of the plea agreement with Handford. We also note that Handford, when testifying for the State and also on cross-examination, stated that he was testifying pursuant to a plea bargain with the State in which a conspiracy charge arising out of the present case was to be dropped and an unrelated residential burglary charge was to be reduced to burglary. He stated that he expected to receive probation on the reduced burglary charge.

The defendants first raised the issue of the uncharged offense involving Handford in their post-trial motions. At a hearing on the motions, the defendants' counsel represented that Handford was implicated in a sexual offense in the county jail, and if necessary, a transcript of a probation revocation hearing of another participant in the sexual offense, in which the victim testified to Handford's involvement, could be obtained. The prosecutor represented that there was no deal regarding "whatever happened in the jail." Defense counsel then stated he had no evidence to show the State had a deal with Handford for this incident except by inference through the fact that the other two participants were prosecuted. The trial court denied the contention of error ruling that absent substantiation, he could not accept that the State had made a deal.

Defendants have sought leave to supplement the trial record with the entire transcript of the probation revocation hearing of one Lenier Johnson. The State objected, and we took the motion and objections with the case. While we deny the motion because the transcript of a separate probation proceeding is not part of the record in this case and was not considered by the trial court (*Cato v. Thompson* (1980), 83 Ill. App. 3d 321, 324-25, 403 N.E.2d 1239; *People v. Prather* (1977), 55 Ill. App. 3d 54, 61, 370 N.E.2d 831), we do conclude from our examination of the transcript of the hearing on defendants' post-trial motion that the fact Handford was named as a participant in the sexual assault apparently was ultimately accepted by the trial court. The court below denied the contention of error on the basis that there was no proof of a deal with the prosecutor arising out of that offense. Therefore, it is unnecessary to supplement the record, or to remand for an evidentiary hearing on this point as defendants alternatively suggest. While defendants now ask for remandment for an evidentiary hearing on the

State's decision not to press charges, no such request was made at the post-trial hearing and is waived. Moreover, defense counsel below stated he could not substantiate that the State's failure to prosecute or bring charges against Handford for this incident was part of a deal with Handford.

The substance of the defendants' argument on appeal is that the nondisclosure of Handford's involvement in another offense and of the State's not pressing charges against him for that offense amounted to a violation of the principles of due process and fundamental fairness. While defendants have not framed the contention in specific terms of the disclosure rule set forth in *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194, a proper analysis of the issue depends upon the application of the rule emanating from *Brady*.

■ In *Brady*, the prosecutor failed to disclose exculpatory evidence. Here, however, the nondisclosed evidence cannot be deemed exculpatory, but was of an impeachment nature. A prosecutor's failure to disclose evidence that the defense might have used to impeach the government's witnesses by showing bias or interest was recently addressed in *United States v. Bagley* (1985), 473 U.S. ___, 87 L. Ed. 2d 481, 105 S. Ct. 3375. The court held that impeachment evidence, as well as exculpatory evidence, falls within the *Brady* rule. Such evidence is evidence favorable to an accused. (473 U.S. ___, ___, 87 L. Ed. 2d 481, 490, 105 S. Ct. 3375, 3380.) In Illinois, it is proper for a defendant to use the type of possible impeachment evidence present here, promises of leniency to a State witness, and its admissibility is not dependent on whether defense counsel can prove beforehand that promises of leniency had been made or any expectations of special favor existed in the witness' mind. (*People v. Foley* (1982), 109 Ill. App. 3d 1010, 1014-15, 441 N.E.2d 655.) Thus, we disagree with the trial judge's conclusion that without substantiation of a deal, the failure to disclose need not be noticed.

■ Like the situation in *Bagley*, the defense here was not restricted in its cross-examination of the prosecution witness on his possible bias resulting from inducements made by the prosecution. The constitutional error, if any, was the failure to assist the defense by disclosing information that might have been helpful in conducting cross-examination. Such suppression of evidence amounts to a constitutional violation only if it deprives the defendant of a fair trial, and "a constitutional error occurs, and the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." *United States v. Bagley* (1985), 473 U.S. ___, ___, 87 L. Ed. 2d 481, 491, 105 S. Ct. 3375, 3381.

The standard of materiality applicable to the nondisclosed evidence, as determined in *Bagley*, is:

> "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." (473 U.S. ___, ___, 87 L. Ed. 2d 481, 494, 105 S. Ct. 3375, 3384.)

The nondisclosed evidence must be evaluated in the context of the entire record to determine if it creates a reasonable doubt that did not otherwise exist. *United States v. Agurs* (1976), 427 U.S. 97, 112, 49 L. Ed. 2d 342, 355, 96 S. Ct. 2392, 2401-02.

■ In the present case, there was evidence at trial of a plea agreement indicating the witness was given leniency on two pending cases for his testimony in this cause. Defendants cross-examined the witnesses on this "deal," and argued the effect of this leniency on the credibility of the witness to the jury in final arguments. The outcome of the case would not have been altered had the State disclosed Handford's alleged involvement in another offense. This is not a case where the prosecutor has been shown to have used perjured testimony. (See *Napue v. Illinois* (1959), 360 U.S. 264, 3 L. Ed. 2d 1217, 79 S. Ct. 1173.) This additional undisclosed evidence of another incident of a criminal offense involving the witness for which he was not charged, for which counsel below admittedly had no direct evidence of a deal and which the State denied, in our opinion, and considering all the evidence in the case, would not have made a difference in the outcome of this trial to undermine confidence in the jury verdict and to warrant a new trial.

### III

■ Both defendants contend that the 50-year extended terms of imprisonment for attempted murder are excessive. They argue that the facts are not indicative of exceptionally brutal or heinous behavior indicative of wanton cruelty. We view the evidence as supporting extended-term sentences within the definition of that phrase set out in *People v. LaPointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344. The armed robbery was planned, the victim Lee was intentionally shot at close range twice by King after being urged several times by Roberson to kill Lee, and King fired several shots at the vehicle in which Lee was riding in as it was being driven away. See *People v. McGee* (1984), 121 Ill. App. 3d 1086, 1089-91, 460 N.E.2d 843.

Defendants also argue that the sentences were excessive consider-

ing their past history and character. A reviewing court will not reduce a sentence unless there is an abuse of discretion. (*People v. Almo* (1985), 108 Ill. 2d 54, 70, 483 N.E.2d 203.) Despite the youth of the defendants and their lack of prior convictions, there is ample evidence of their bad character and lack of rehabilitative potential, other than what is shown by this serious incident, which support the trial judge's sentence. See *People v. Jenkins* (1980), 88 Ill. App. 3d 719, 727, 410 N.E.2d 1145.

## IV

Finally, both defendants contend that their 14-year extended-term sentences for conspiracy to commit robbery are violative of Illinois law and ask that this court reduce their sentences for this offense to a term of imprisonment not to exceed the three-year maximum allowed under section 5—8—1(a)(7) of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(a)(7)). Where a defendant is convicted of multiple offenses of different classes, an extended-term sentence may only be imposed for the most serious offense. (*People v. Jordan* (1984), 103 Ill. 2d 192, 205-06, 469 N.E.2d 569.) The sentence for attempted murder is that of a Class X felony, whereas the sentence for conspiracy to commit robbery falls within a lower classification for that of a Class 4 felony. Not only is the extended-term sentence imposed for conspiracy to commit robbery improper, but also the trial court further erred in determining that conspiracy to commit robbery is a Class 2 felony. The sentence for conspiracy to commit robbery cannot be in excess of that for a Class 4 felony (Ill. Rev. Stat. 1983, ch. 38, par. 8—2(c)) and the maximum term of imprisonment is three years. (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(a)(7).) The State concedes both these points. Pursuant to Supreme Court Rule 615(b)(4) (87 Ill. 2d R. 615(b)(4)), we vacate the 14-year extended-term sentences and, as it is apparent from the record that the trial judge intended to impose the maximum penalty for this offense, we modify the defendants' sentences to the maximum nonextended term, which is three years. See *People v. White* (1985), 134 Ill. App. 3d 262, 284, 479 N.E.2d 1121.

For the foregoing reasons, the convictions and extended-term sentences for attempted murder for both defendants are affirmed, the convictions for conspiracy to commit robbery are affirmed, and the extended-term sentences for the conspiracy convictions are modified to concurrent three-year terms of imprisonment for each defendant.

Affirmed as modified.

STROUSE and UNVERZAGT, JJ., concur.