(No. 69663.—

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. RAYMOND THINGVOLD, Appellee.

*Opinion filed December 19, 1991.*

MILLER, C.J., joined by BILANDIC, J., dissenting.
HEIPLE, J., also dissenting.

Neil F. Hartigan, Attorney General, of Springfield, and Paul A. Logli, State's Attorney, of Rockford (Robert J. Ruiz, Solicitor General, and Terence M. Madsen and Jack Donatelli, Assistant Attorneys General, of Chicago, and Kenneth R. Boyle, William L. Browers and Marshall M. Stevens, of the Office of State's Attorneys Appellate Prosecutor, of Elgin, of counsel), for the People.

Mary Robinson, of Robinson & Skelnik, of Elgin, for appellee.

JUSTICE CLARK delivered the opinion of the court:

On June 25, 1987, defendant, Raymond Thingvold, was charged pursuant to an information filed by the Winnebago County State's Attorney with the offense of solicitation (Ill. Rev. Stat. 1985, ch. 38, par. 8—1). The information charged that between December 1, 1983, and April 30, 1986, defendant solicited George Nalan to commit the murder of defendant's wife, Barbara Thingvold. Defendant was found guilty after a jury trial, and sentenced to 25 years in prison.

The appellate court reversed defendant's conviction and remanded for a new trial. The appellate court held that other-crimes evidence, specifically that Barbara

Thingvold was stabbed numerous times on April 26, 1986, and that Barbara Thingvold was stabbed to death on March 10, 1987, was erroneously admitted since the State failed to link defendant to either of these incidents. (191 Ill. App. 3d 144.) We granted the State's petition for leave to appeal (134 Ill. 2d R. 315). In addition, defendant has requested cross-relief (134 Ill. 2d R. 315(g)), arguing that the information with which he was charged was deficient because it failed to allege that any criminal conduct occurred within the applicable statute of limitations period, and failed to adequately plead an exception to the statute of limitations.

We will first analyze defendant's assertion that the information was defective. The information, filed on June 25, 1987, reads:

> "That *between the dates of December 1, 1983 and the 30th of April, 1986*, in the County of Winnebago and the State of Illinois, RAYMOND J. THINGVOLD committed the offense of Solicitation in that he, with the intent that the offense of murder be committed by George Nalan, encouraged or requested the said George Nalan to commit the offense of murder, this offense being based upon a series of acts performed at different times, in violation of Paragraph 8—1 and 3—8, chapter 38, Illinois Revised Statutes."

A prosecution for the offense of solicitation must commence within three years of the commission of the crime. (Ill. Rev. Stat. 1987, ch. 38, par. 3—5(b).) However, when the offense is based upon a series of acts performed at different times, the limitation period starts when the last such act is committed. Ill. Rev. Stat. 1987, ch. 38, par. 3—8.

As he did in his pretrial motion to dismiss and his post-trial motion in arrest of judgment, defendant argues that the information failed to allege that the offense of solicitation occurred within the applicable statute of limi-

tations. Defendant maintains that since the information was filed on June 25, 1987, the period of time from December 1, 1983, through June 24, 1984, is clearly outside the three-year statute of limitations period. Thus, to prosecute defendant for conduct outside the period fixed by the statute of limitations, facts must be alleged and proved which would toll the running of the statute of limitations under an exception to the statute. (See *People v. Strait* (1978), 72 Ill. 2d 503, 505-06.) In this case, in order to toll the statute of limitations under section 3—8 of the Criminal Code of 1961, defendant argues, the State should have alleged in the information that the last act of solicitation occurred after June 24, 1984, and therefore the entire information would have been within the statute of limitations period. Defendant relies primarily on *People v. Toolen* (1983), 116 Ill. App. 3d 632, as support for his assertion that the information is deficient.

In *Toolen*, the indictment, filed on. January 29, 1982, alleged that the criminal conduct occurred "between January 1, 1979 and October 1980." The first month of that period was beyond the limitation period, and no facts in the indictment established that the last of any series of acts occurred later than that first month. Consequently, the appellate court dismissed the indictment because the State failed to allege facts giving rise to the exception for a series of acts (section 3—8). *Toolen*, 116 Ill. App. 3d at 653.

In the present case, the appellate court, in discussing this issue, acknowledged that "[n]owhere *** does the information allege that any of defendant's actions were performed within the limitation period. No facts are alleged that even the last of the series of acts occurred after June 24, 1984." (191 Ill. App. 3d at 147.) Nonetheless, the appellate court concluded that this is not "fatal" and that "the information in the case before us

was sufficiently explicit to enable defendant to prepare his defense and to apprise him that the last act occurred within the time prescribed by the statute of limitations." (191 Ill. App. 3d at 147.) As support for this conclusion, the appellate court noted that the information alleged the applicability of section 3—8, which put defendant on notice that he was being charged with a series of actions in the relevant period, and further, the trial court instructed the jury that it must find that defendant solicited Nalan on at least one occasion within the applicable limitations period.

We find that the appellate court applied the wrong analysis in evaluating. defendant's information, and that the information is fatally deficient. The appellate court's analysis shows that it applied a standard of review that should be invoked only when a defendant challenges an information or indictment for the first time on appeal. When an indictment or information is attacked for the first time on appeal, it is sufficient that the indictment or information "apprised the accused of the precise offense charged with sufficient specificity to prepare his defense and allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct." (*People v. Gilmore* (1976), 63 Ill. 2d 23, 29; *People v. Pujoue* (1975), 61 Ill. 2d 335, 339.) In other words, the appellate court should consider whether the defect in the information or indictment prejudiced the defendant in preparing his defense. If, however, the information or indictment is attacked before trial, as in this case, the information must strictly comply with the pleading requirements of the Code of Criminal Procedure of 1963. See Ill. Rev. Stat. 1989, ch. 38, par. 111—3(a); *People v. Smith* (1984), 99 Ill. 2d 467; *Gilmore*, 63 Ill. 2d at 29; *Pujoue*, 61 Ill. 2d at 339.

The information is fatally deficient. In *People v. Strait*, this court stated:

"[There is] the long-established rule that if the indict-
ment or information shows on its face that the offense
was not committed within the period of limitation *facts
must be averred which invoke one of the exceptions con-
tained in the statute.*" (Emphasis added.) (*Strait,* 72 Ill.
2d at 504-05.)

(See also *People v. Morris* (1990), 135 Ill. 2d 540, 543.)
The information failed to allege that any of defendant's
actions occurred within the appropriate limitation period.
As defendant explains in his brief, the State could prove
exactly what it alleged in the information, that "between
December 1, 1983 and April 30, 1986, defendant en-
gaged in a series of acts performed at different times,"
without proving that any one act of solicitation occurred
within the period of limitation. All of the alleged acts of
solicitation of Nalan could have occurred before June 25,
1984, and still would have occurred between December
1, 1983, and April 30, 1986, as the information alleges.

Given that the information failed to allege that any of
defendant's actions occurred within the period of limita-
tion, the State was required under *Strait* to aver facts
invoking one of the exceptions to the statute of limita-
tions. In this case, the State relied upon section 3—8,
which pertains to limitations applicable to an offense
based upon a series of acts. But, the State failed to al-
lege that even the last of a series of acts occurred within
the appropriate limitation period. Consequently, defend-
ant's information is insufficient to charge defendant with
solicitation of Nalan, and his conviction must be re-
versed.

The appellate court justified its decision by noting
that the information alleged the applicability of section
3—8, and that the jury was instructed to find that
defendant committed one act of solicitation within the
limitations period. First, as noted above, in evaluating
an information or indictment under a pretrial motion to

dismiss, it is irrelevant that the jury was instructed to find one act of solicitation by the defendant within the limitations period. Second, and more importantly, asserting the legal conclusion that section 3—8 applies, without averring facts which support this conclusion, is insufficient. The State has failed to put the defendant on notice that any of his actions occurred within the period of limitation. Since defendant challenged the sufficiency of his information in a pretrial motion to dismiss, the information must strictly comply with the pleading requirements of the Code of Criminal Procedure.

Because the State may opt to recharge defendant for the solicitation of Nalan (see Ill. Rev. Stat. 1987, ch. 38, par. 3—7 (stating that the period within which a prosecution must be commenced does not include the period in which a prosecution is pending against the defendant for the same conduct, even if the information which commences the prosecution is quashed, or the proceedings thereon are set aside, or are reversed on appeal)), we will review the evidentiary issues preserved in this appeal.

The first evidentiary issue is whether the trial court abused its discretion in allowing the testimony of three men who claimed that defendant also solicited them to kill his first wife, Diane, and his second wife, Barbara.

At trial, Roger Atkinson testified that between 1974 and 1976, he worked at the Winnebago County Juvenile Corrections Center as a guard. Atkinson stated that defendant worked there part-time as a fill-in for those on vacations, or when the Center was understaffed. Atkinson testified that on two or three occasions, defendant brought up the possibility of having his wife at that time, Diane, killed so that defendant could collect a large insurance settlement. Atkinson stated that defendant never revealed how much insurance he had on Diane. Further, Atkinson stated that these conversations were

between defendant, himself and a co-worker, and they consisted of "brainstorming" on methods to kill Diane. Atkinson characterized his relationship with defendant as "working acquaintances," and acknowledged that he and defendant never socialized together. Atkinson stated that after July 1976, he did not speak with defendant again about having Diane killed. Defendant and Diane were divorced in 1978.

Sidney Haffendon also testified for the State. Haffendon stated that he was a co-worker of defendant at the Winnebago County Juvenile Corrections Center between 1973 and 1976. Haffendon stated that he and defendant became friends, and that he "stood up" in defendant's wedding to Barbara in March 1978. According to Haffendon, between 1980 and 1986, defendant discussed killing defendant's second wife, Barbara, on numerous occasions so that defendant could collect under the insurance policies on Barbara's life. Haffendon stated that defendant wanted him to "wire" money from a Western Union office in Iowa to a hired killer, and that in return for his assistance, defendant would give Haffendon a new 1979 Cougar, or a partnership in a restaurant in Phoenix. Lastly, Haffendon stated that defendant wanted the killer to stab Barbara in the stomach because she had recently undergone abdominal surgery, and such a stabbing would likely cause Barbara to bleed to death.

James Wagaman testified that he met defendant through Sidney Haffendon in the 1970s, but they never socialized together. According to Wagaman, in the fall of 1983, while defendant was working as a night security guard at a grocery store, Wagaman entered the store around midnight and a conversation ensued between defendant and Wagaman. Wagaman stated that defendant asked him to kill Barbara so that defendant could recover insurance money on Barbara. Similar to Haffendon's testimony, Wagaman stated that defendant told

him to stab Barbara in the stomach because Barbara had recently undergone a stomach operation. Further, Wagaman stated that defendant offered him $5,000 to kill Barbara. Wagaman stated that, prior to this conversation in the grocery store, defendant had never mentioned to Wagaman that he wanted Barbara killed, nor did he bring this subject up after their conversation.

Evidence of crimes for which a defendant is not on trial is inadmissible if relevant merely to establish his propensity to commit crime. (*People v. Lucas* (1989), 132 Ill. 2d 399; *People v. Richardson* (1988), 123 Ill. 2d 322; *People v. Bartall* (1983), 98 Ill. 2d 294, 309-10; *People v. McKibbins* (1983), 96 Ill. 2d 176; *People v. Lindgren* (1980), 79 Ill. 2d 129, 137.) Such evidence overpersuades the jury, which might convict the defendant only because it feels he is a bad person deserving punishment. (*Richardson*, 123 Ill. 2d at 339; *Lindgren*, 79 Ill. 2d at 137; see also M. Graham, Cleary & Graham's Handbook of Illinois Evidence §404.5, at 191 (5th ed. 1990).) Evidence of the commission of other crimes is admissible, however, when such evidence is relevant to prove *modus operandi*, intent, identity, motive, or absence of mistake. (*McKibbins*, 96 Ill. 2d at 182; *People v. Baptist* (1979), 76 Ill. 2d 19.) In fact, this court has held that evidence of other crimes committed by the defendant may be admitted if relevant to establish any material question other than the propensity to commit a crime. (*People v. Stewart* (1984), 105 Ill. 2d 22, 62; *McKibbins*, 96 Ill. 2d at 182; *People v. McDonald* (1975), 62 Ill. 2d 448; *People v. Dewey* (1969), 42 Ill. 2d 148, 157.) When such evidence is offered, the trial judge must weigh the relevance of the evidence to establish the purpose for which it is offered against the prejudicial effect the introduction of such evidence may have upon the defendant. (*Stewart*, 105 Ill. 2d at 62.) The trial court's ruling as to the admissibility of such evidence will not be reversed

absent a clear showing of abuse of discretion. *People v. Phillips* (1989), 127 Ill. 2d 499, 522; *People v. King* (1985), 140 Ill. App. 3d 937, 941.

The testimonies of these three men were admitted to show intent and motive on the part of defendant to solicit Nalan to commit the murder of Barbara. Regarding Haffendon and Wagaman, defendant argues that neither provided independent evidence that the insurance motive existed by establishing the existence of actual insurance policies. Defendant states that the actual insurance policies in existence tend to negate the proof of motive. Defendant testified without contradiction that until 1980, Barbara was not covered by insurance. Thereafter, and until 1985, the amount was approximately $50,000. On cross-examination, Haffendon stated that he thought defendant said he would receive $100,000 in insurance proceeds if Barbara were to die. Defendant also argues that the testimonies of Haffendon and Wagaman do not support the State's theory that defendant *intended* for Nalan to commit the offense of murder since neither Haffendon nor Wagaman knew that defendant wanted Nalan to kill Barbara.

We agree with the appellate court that the trial court did not err in admitting the testimonies of Haffendon and Wagaman. In terms of motive, both witnesses stated that the collection of insurance proceeds was the primary reason defendant wanted Barbara murdered. This was the common motive behind defendant's solicitation of these men. Consequently, the fact that defendant solicited two other men to kill Barbara for the purpose of obtaining insurance proceeds tends to prove that defendant solicited Nalan to kill Barbara for the purpose of obtaining insurance proceeds. Defendant's argument that the actual insurance policies in effect at the time of the alleged solicitations negate any possibility of motive is baseless. The evidence of the actual insurance policies in

effect goes to the weight of the witnesses' testimonies, not their admissibility. Similarly, in terms of intent, the State had to prove that defendant intended for Nalan to kill Barbara when he solicited him. The fact that defendant also solicited two other men to kill Barbara tends to prove that defendant actually intended for Nalan to kill Barbara.

Regarding the testimony of Atkinson, defendant solicited Atkinson to kill his *first wife*, Diane, in order to obtain insurance proceeds *nearly 10 years prior* to defendant's solicitation of Nalan to kill his *second wife*, Barbara. Defendant argues that this evidence lacks probative value because it is too remote in time and detail. The State contends that this evidence "was just the beginning of a ten-year odyssey to get rich off the murder of his wife," although the State does not delineate to which wife it is referring. The trial court admitted Atkinson's testimony to show motive and intent. We find that the trial court erred in admitting the testimony of Atkinson because this evidence merely established defendant's propensity to commit crime.

Despite the State's contentions, the record does not reveal a "ten-year odyssey to get rich off the murder of his *wife*." (Emphasis added.) The only evidence showing that Diane was covered by insurance was a $5,000 to $10,000 employment-related group insurance plan. There is no evidence that defendant was the beneficiary of this plan. Further, according to Atkinson's testimony, he never spoke with defendant after July 1976 about having Diane killed. Defendant next solicited Haffendon five years later, in 1980 or 1981, about having his second wife, Barbara, killed. Given these facts and the fact that defendant divorced Diane in 1978 and subsequently married Barbara, we are skeptical of the State's claim that Atkinson's testimony reveals a 10-year scheme to get rich off the murder of defendant's *wife*.

More importantly, we do not believe that Atkinson's testimony supports the State's theory of intent or motive. In terms of intent, the State was required to prove that defendant *intended* that Nalan kill Barbara when he solicited him. The fact that defendant may have solicited Atkinson nearly 10 years earlier to kill Diane does not prove defendant intended to have Nalan kill Barbara. Rather, Atkinson's testimony is an example of evidence admitted to show defendant's propensity or disposition to commit crime. In terms of motive, it is difficult to understand the State's contention that because defendant discussed recovering insurance proceeds on Diane, defendant had a motive to seek Barbara's death. Evidence of actual insurance policies on Barbara's life and testimony by Haffendon and Wagaman support the State's claim of motive in this case. But, Atkinson's testimony offers no support that defendant was motivated to have Barbara killed so that he could recover insurance proceeds.

The next evidentiary issue is whether the trial court erred in admitting evidence of a violent attack on Barbara, which occurred on April 21, 1986. Barbara was stabbed numerous times in the neck, chest and abdomen while at the office of the ambulance company she and defendant owned. No one was ever arrested for this attack. The trial court denied defendant's motion *in limine* to keep out evidence of this attack, and admitted this evidence on the issues of intent or motive.

As stated earlier, evidence of other crimes committed by the defendant is admissible if it is relevant for any purpose other than to show the propensity to commit a crime. (*People v. Phillips* (1989), 127 Ill. 2d 499, 520.) However, before such evidence is admitted, the State must first show that a crime took place and that *the defendant committed it or participated in its commission. (Wernowsky v. Economy Fire & Casualty Co.*

(1985), 106 Ill. 2d 49, 55; M. Graham, Cleary & Graham's Handbook of Illinois Evidence §404.5, at 191 (5th ed. 1990); *Phillips*, 127 Ill. 2d at 520; *People v. Gugliotta* (1980), 81 Ill. App. 3d 362, 365; *People v. Miller* (1977), 55 Ill. App. 3d 421, 426; *People v. Scott* (1973), 13 Ill. App. 3d 620, 626.) Proof that the defendant committed the crime, or participated in its commission, need not be beyond a reasonable doubt (*Wernowsky*, 106 Ill. 2d at 55; *People v. Baptist* (1979), 76 Ill. 2d 19, 28), but such proof must be more than a mere suspicion (*Gugliotta*, 81 Ill. App. 3d at 365; *Miller*, 55 Ill. App. 3d at 426).

Turning to the case at bar, we agree with the appellate court that the State failed to connect defendant to this stabbing and, consequently, this evidence should not have been admitted. At trial, the State acknowledged that defendant did not attack Barbara on April 21, 1986. The attacker was never apprehended or identified. All of the State's witnesses whom defendant solicited to kill Barbara stated that they took no action towards that end. The State argues that a sufficient connection between defendant and the attack was made through the testimonies of Haffendon and Wagaman, who both testified that defendant told them the killer should *stab* Barbara due to her recent stomach operation. This fact is not enough to raise defendant's participation in the attack beyond a mere suspicion. Nalan never testified that defendant thought the killer should stab Barbara, and in fact stated that defendant told him the killer should tamper with the brakes on Barbara's car. Given that there is no concrete evidence linking defendant to the 1986 stabbing of Barbara, we find that the trial court erred in admitting this extremely prejudicial evidence.

The last evidentiary issue to be discussed is whether the trial court erred in admitting evidence that Barbara Thingvold was stabbed to death in her house on March

10, 1987. Prior to trial, defendant filed a subpoena *duces tecum* requesting the police reports concerning the homicide investigation. The State, arguing that the murder was not related to defendant's solicitation charge, moved to quash the subpoena. The trial court sustained the State's motion in part, giving defendant only those reports related to the solicitation charge. Subsequently, defendant filed a motion *in limine* to exclude evidence of Barbara's murder. The State's Attorney, during the hearing on defendant's motion, stated that he had no intention of introducing evidence of the 1987 murder during its case in chief. The trial court then granted defendant's motion. Later, before trial, the State moved to have the trial court reconsider its order excluding evidence of the murder, but the court refused.

During the defendant's case in chief, defendant testified that in late March 1987, Nalan called defendant in an attempt to extort money from him. Defendant stated that Nalan threatened to tell the police that defendant had given him keys to Barbara's car so that Nalan could tamper with it. At this point in the trial, the jury was unaware that Barbara had been murdered. The State requested a meeting in chambers, and argued that defendant's surprising testimony regarding Nalan's extortion scheme opened the door to evidence of Barbara's homicide. According to the State, approximately two weeks after Barbara's homicide, Nalan called defendant and told him that he knew Barbara had been murdered, that he had found someone in Texas "to do it," but it was now too late as defendant had already found someone. Apparently, Nalan called defendant pursuant to police instructions in an attempt to obtain incriminating statements from defendant regarding his role in Barbara's homicide. The State argued that evidence of Barbara's homicide was now admissible to *bolster Nalan's credibility* as to why he waited until March 1987 to inform the

police of defendant's solicitations, and to rebut defendant's claim that Nalan tried to extort him. While arguing in chambers, the State repeatedly stated that evidence of Barbara's homicide was not admissible as "other-crimes" evidence, and in fact asserted that *there is no evidence available to connect defendant to the homicide.*

The trial court held that evidence of Barbara's homicide was admissible for the limited purpose of witness credibility because defendant "opened the door" to evidence of Barbara's homicide. The trial court denied defendant's motion for a mistrial. Subsequently, the following limiting instruction was read to the jury:

> "Evidence has been received of the death of Barbara Thingvold. This evidence has been received solely on the issue of the credibility of witnesses. This evidence may be considered by you only for the limited purpose for which it was received.
>
> The defendant has not been charged with any offense relating to that death and is presumed to be innocent of involvement in it. You should not infer otherwise from the evidence."

The appellate court held that the trial court abused its discretion in admitting evidence of Barbara's homicide. The appellate court noted that evidence of other crimes is inadmissible solely to enhance witness credibility. (See *People v. Romero* (1977), 66 Ill. 2d 325, 329-32.) Thus, the reason the court admitted the evidence was itself insufficient. (191 Ill. App. 3d at 151.) Further, the appellate court stated that evidence of Barbara's homicide could not be admitted as other-crimes evidence because the State failed to show defendant was involved in Barbara's murder. (191 Ill. App. 3d at 151.) The appellate court believed that the probative value of this evidence was far outweighed by the prejudice it entails.

We agree with the appellate court that evidence of Barbara's homicide is inadmissible. In its brief to this

court, the State makes two arguments in its attempt to have this evidence admitted. First, the State argues that this evidence was admissible to establish Nalan's credibility. The State contends that defendant made Nalan's credibility a "pivotal" issue in this case, and thus this evidence should come in under the "well-established principle that 'evidence of other offenses is admissible if it is relevant for any purpose other than to show the propensity to commit crime.' " (Quoting *Bartall*, 98 Ill. 2d at 310.) In so arguing, the State asserts that this court's decision in *Romero* does not prevent the use of other-crimes evidence when relevant to establish a witness' credibility. Second, the State argues that this evidence is relevant as proof of defendant's *intent* for Nalan to commit murder when he solicited him. The State claims that it sufficiently connected defendant to the homicide so that this evidence can come in as evidence of other crimes.

We disagree. Initially we note, as the appellate court did, that evidence of other crimes is not admissible to bolster the credibility of a prosecution witness. (*Romero*, 66 Ill. 2d at 332; M. Graham, Cleary & Graham's Handbook of Illinois Evidence §404.5, at 198 (5th ed. 1990).) Thus, the express reason the trial court admitted this evidence is invalid. In addition, the State's reliance on the "well-established principle" that evidence of other crimes is admissible if it is relevant for any purpose other than to show the propensity to commit crime is difficult to understand. A more precise and accurate phrasing of this "well-established principle" is:

> "This court has held that evidence of other crimes *committed by defendant* may be admitted if relevant to establish *any material question* other than the propensity of the defendant to commit a crime." (Emphasis added.) (*People v. Stewart* (1984), 105 Ill. 2d 22, 62.)

In this case, the State has failed to connect defendant to Barbara's homicide. While arguing in the trial judge's chambers on this issue, the State's Attorney stated: "[I] am not proposing that the jury be advised of [Barbara's] murder under the principle of other-crimes evidence. *We are not suggesting that there is evidence available here to show that nexus or that connection between this defendant and that murder.*" (Emphasis added.) Further, we are hard-pressed to conclude that Nalan's credibility is a "material question" in defendant's trial for solicitation of murder. Although Nalan's credibility is important to the State's ability to convict defendant, we fail to see how it is a "material question" like motive, intent, absence of mistake, *modus operandi*, common scheme or design, etc. Thus, this "well-established principle" does not support the State's attempt to have evidence of Barbara's murder boost Nalan's credibility.

Regarding the State's assertion that evidence of Barbara's murder is admissible to show the *intent* of defendant to solicit Nalan to murder Barbara, we find this argument to be incredible. As noted above, the State's Attorney repeatedly stated for the record that evidence of Barbara's homicide should not and will not be used as evidence of other crimes, but rather as evidence of Nalan's credibility. The State's Attorney conceded that there is no evidence connecting defendant to this homicide. Nonetheless, the State, in its brief to this court, argues that a connection exists through the testimony of "numerous people who had heard [defendant] say many, many times that he wanted Barbara killed and he wanted the attacker to use a knife."

Notwithstanding the propriety of the State's raising for the first time in this court the argument that evidence of Barbara's homicide is admissible as other-crimes evidence, we find that there is no concrete evi-

dence connecting defendant to the homicide, and thus, the evidence should be excluded. As stated earlier, "evidence of other crimes is not admissible unless some showing is made that the other crime was actually committed and that the defendant took part in it." (*Wernowsky*, 106 Ill. 2d at 55.) Defendant's participation must not be proved beyond a reasonable doubt, but it must be more than a mere suspicion. The State claims that "numerous persons" heard defendant say "many, many times" he wanted Barbara stabbed to death. In fact, only two persons testified that defendant wanted Barbara stabbed, and both denied taking any steps towards that end. Further, Nalan, the person defendant is charged with soliciting, testified that the only method defendant discussed with him involved tampering with the brakes on Barbara's car. Given that there is no evidence tending to prove that defendant committed the murder, that anyone he solicited committed the murder, and that the State's Attorney conceded at trial that the State has no evidence establishing a nexus between defendant and the murder, we conclude that evidence of Barbara's murder was inadmissible.

For the above mentioned reasons, we affirm the decision of the appellate court.

*Judgment affirmed.*

CHIEF JUSTICE MILLER, dissenting:

I respectfully dissent. I do not agree with the majority's holding that the information used to charge the defendant with the present offense was fatally deficient. Nor do I agree with the majority's further determinations that certain evidence was erroneously admitted at the defendant's trial. Accordingly, I would uphold the defendant's conviction.

The defendant was charged by information on June 25, 1987, with the offense of solicitation, a felony. Ac-

cording to the information, the defendant solicited George Nalan to murder the defendant's wife, Barbara Thingvold. The information alleged that the offense was "based upon a series of acts performed at different times" and, moreover, that the acts constituting the offense were committed between December 1, 1983, and April 30, 1986, an interval falling largely within the applicable three-year limitations period for felonies (see Ill. Rev. Stat. 1987, ch. 38, par. 3—5(b)). In addition, the information cited the special tolling provision of section 3—8 of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 3—8), which provides that the limitations period for an offense based on a series of acts commences when the last act of the series is committed.

The information superseded an earlier two-count complaint, filed April 30, 1987. The complaint had charged the defendant with two separate acts of solicitation, one occurring on April 5, 1986, and the other occurring on December 3, 1986, in which the defendant asked Nalan to murder Barbara. Following a preliminary hearing on June 25, 1987, the trial court found probable cause on the first count but not on the second. The State apparently filed the superseding information later that day.

The majority concludes that the information used in the present case is fatally deficient because it does not specifically allege that any of the defendant's acts occurred within the three-year period preceding the filing of that charge. In my view, the majority fails to consider the charging instrument in its entirety, ignoring the reference to the special tolling provision applicable to offenses comprising series of acts.

In the present case, the information alleged that the defendant's offense comprised a series of acts, that the defendant committed those acts within a specified period of time, much of which fell within the governing limitations period, and, finally, that the special tolling provi-

sion for serial, or continuing, offenses was applicable. The reference to the tolling provision necessarily implied that the last act in the series occurred within the applicable limitations period. In my view, these allegations, in combination, demonstrated that prosecution of the defendant for the present offense was not time-barred.

For these reasons, I find distinguishable the cases cited by the majority to support its conclusion that the charging instrument used in the present case was fatally deficient. In *People v. Morris* (1990), 135 Ill. 2d 540, a subsequent indictment alleged the defendant's commission of several offenses on a date outside the applicable limitations period. Although the defendant had initially been charged in a timely manner for the same misconduct, and the pendency of the original prosecution would have tolled the running of the statute of limitations, the later charge failed to cite the tolling provision, and we accordingly held that the second indictment was fatally deficient. In *People v. Strait* (1978), 72 Ill. 2d 503, the information alleged only a single occurrence on a date outside the applicable limitations period, and nothing on the face of the charging instrument indicated why the prosecution would not be time-barred. It appears that the charge in that case could have been saved by an allegation that the defendant was outside the State during the intervening years. (See *People v. Strait* (1977), 52 Ill. App. 3d 599, 604.) Finally, in *People v. Toolen* (1983), 116 Ill. App. 3d 632, the indictment alleged the defendant's commission of an offense during a certain span of time, a portion of which was outside the applicable limitations period. The indictment failed to cite any statutory provision that would toll the limitations period, however, and the appellate court concluded that the prosecution was time-barred.

Unlike the invalid charging instruments at issue in *Morris*, *Strait*, and *Toolen*, the information used in the

present case set forth the basis on which the limitations period was tolled and adequately alleged that the prosecution was not time-barred. I would conclude that the information used in the present case satisfied the pleading requirements prescribed by section 111—3(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, par. 111—3(a)). Had the prosecution failed in its proof, the defendant would have been entitled to judgment in his favor. (See *People v. Carman* (1943), 385 Ill. 23, 25.) As a final matter, it should be noted that the defendant had at his disposal the means of obtaining further information concerning the charge against him. Although a bill of particulars will not cure a void or fatally deficient charging instrument, a bill may be used to supplement the allegations set forth in a valid charge by providing an accused with additional details of the alleged offense. (*People v. Aud* (1972), 52 Ill. 2d 368, 369-70; *People v. Adams* (1970), 46 Ill. 2d 200, 204-05.) In the present case, greater specificity could be, and was, supplied to the defendant by a bill of particulars.

Because the defendant may be retried for the present offense, the majority also examines several other issues raised by the defendant before this court. The majority first considers the admission of testimony by three witnesses regarding the defendant's efforts to solicit them to commit murder. Sidney Haffendon and James Wagaman testified that the defendant asked them separately to murder the defendant's second wife, Barbara. Roger Atkinson testified that the defendant asked him to murder the defendant's first wife, Diane. The majority concludes that Haffendon's and Wagaman's testimony is admissible but that Atkinson's is not. In light of the elements of the defendant's offense, I believe that the trial judge properly admitted the testimony of all three witnesses.

The defendant was charged with solicitation, a violation of section 8—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 8—1). Under the version of the statute applicable in the present prosecution, that offense is defined as follows:

"A person commits solicitation when, with intent that an offense be committed, he commands, encourages or requests another to commit that offense." (Ill. Rev. Stat. 1987, ch. 38, par. 8—1(a).)

Thus, the State was required to prove that the defendant intended for his wife, Barbara, to be murdered and, furthermore, that he commanded, encouraged, or requested George Nalan, the person solicited, to commit the murder.

As the majority opinion observes, evidence of other crimes committed by an accused may be admitted if the evidence is offered for a purpose other than to demonstrate a propensity to commit crime and if its probative value outweighs the risk of unfair prejudice. (145 Ill. 2d at 452.) Given the elements of the offense of solicitation, I would conclude that the trial judge did not abuse his discretion in admitting Atkinson's testimony. The defendant believed that he would gain financially from the murder of his first wife, and he enlisted Atkinson's assistance toward that end. This testimony supplied relevant evidence of the defendant's later motive and intent in soliciting the murder of his second wife, Barbara. In *People v. Bean* (1990), 137 Ill. 2d 65, 106-07, we found no error in the presentation of testimony that the defendant, on trial in a murder-for-hire scheme, claimed to have committed other contract killings. The court found that the testimony was relevant evidence of the defendant's "intent and willingness" to commit the charged offense. (*Bean*, 137 Ill. 2d at 107.) By the same token, the testimony relating the defendant's attempt to persuade Atkinson to kill the defendant's first wife was relevant

evidence of the defendant's efforts to persuade Nalan to murder the defendant's second wife.

The majority also concludes that the trial court erred in admitting evidence of the April 1986 stabbing attack on Barbara. The incident occurred several weeks after a conversation between the defendant and Nalan in which the two discussed the defendant's plans for her murder. Like the testimony concerning the defendant's efforts to solicit persons other than Nalan to commit murder, the testimony relating the April 1986 attack was introduced as evidence of the defendant's motive and intent. The majority concludes that the testimony was erroneously admitted because the State failed to provide sufficient evidence establishing the defendant's participation in the incident.

Evidence of a defendant's other criminal misconduct is not admissible unless there is some proof that the offense occurred and that the defendant participated in its commission. (*Wernowsky v. Economy Fire & Casualty Co.* (1985), 106 Ill. 2d 49, 55.) The offense and the defendant's role in it need not be established beyond a reasonable doubt, however. (*Wernowsky*, 106 Ill. 2d at 55.) In my view, there was sufficient proof of the defendant's responsibility for the stabbing. According to the trial testimony, prior to the attack the defendant told both Haffendon and Wagaman that Barbara had previously undergone abdominal surgery and suggested to them that Barbara be stabbed in the stomach because the ensuing complications could be fatal. In the course of the attack, Barbara suffered numerous stab wounds, including wounds to the abdomen. That the intended victim was attacked in a manner specifically suggested by the defendant raises more than a mere suspicion that the defendant was accountable for that offense and is sufficient, in my view, to connect the defendant to the of-

fense. This evidence had unquestioned relevance, and I find no error in its introduction.

With respect to the defendant's final allegation of error, the majority determines that the trial judge improperly admitted evidence that Barbara was murdered in March 1987. Characterizing this information as "other-crimes" evidence, and thus subject to the requirements governing the admission of evidence of that nature, the majority believes that there was insufficient proof linking the defendant to the offense and, moreover, that the testimony was offered for an improper purpose.

As the majority opinion recounts, the State initially resisted introduction of evidence of Barbara's death but later sought to introduce that information in the wake of certain testimony given by the defendant. During direct examination, the defendant testified that George Nalan called him on the telephone late in March 1987 and attempted to extort money from him. According to the defendant, Nalan threatened to tell the police that the defendant had provided him with keys to Barbara's car so that he could then tamper with the vehicle. Following this testimony, the trial judge ruled that the State could present rebuttal evidence relating to Barbara's murder. Testifying in rebuttal, George Nalan denied making the extortion attempt alleged by the defendant. Nalan further stated that he regretted Barbara's death and that about 1½ weeks after the murder—she was killed on March 10, 1987—he approached the authorities and offered to assist them in their investigation. Later, on March 26, Nalan called the defendant on the telephone, apparently attempting to elicit incriminating evidence from him. In overruling the defendant's objection to Nalan's rebuttal testimony, the trial judge believed that the defendant had opened the door to the introduction of this evidence. I agree.

Unlike the majority, I would not categorize this testimony as "other-crimes" evidence requiring some showing of the defendant's participation in the offense. The evidence of Barbara's murder was used to explain Nalan's cooperation with the police and was properly admitted to rebut the defendant's assertion that Nalan attempted to extort him in the present case. Contrary to the majority's view, then, it is of no moment that the State failed to connect the defendant to the murder. The fact of Barbara's murder, rather than the cause or agency of her death, was significant here, and thus there was no need to show the defendant's participation in the offense. In light of the proper and limited purpose for which this testimony was offered, the identity of the murderer was, in the circumstances here, irrelevant.

Finding no fatal deficiency in the charging instrument and no reversible error in the trial court proceedings, I would uphold the defendant's conviction for solicitation. For these reasons, I respectfully dissent.

JUSTICE BILANDIC joins in this dissent.

JUSTICE HEIPLE, also dissenting:

Barbara Thingvold, the wife of Raymond Thingvold, was stabbed to death in her home in March 1987. Previously, in April 1986, she had been the victim of a stabbing attack which occurred in the offices of the ambulance company which she and her husband operated. The person or persons who stabbed Barbara Thingvold were never ascertained. Subsequently, however, her husband, Raymond Thingvold, was convicted by a jury of the offense of soliciting his wife's murder. (Ill. Rev. Stat. 1987, ch. 38, pars. 3—8, 8—1.) He was sentenced to a term of imprisonment of 25 years.

A fair reading of the evidence in this case leaves no doubt, reasonable or otherwise, but that the verdict of

the jury was correct and that Raymond Thingvold was guilty of soliciting the murder of his wife. Thingvold was not charged with the actual murder which occurred in 1987 or the attempted murder which occurred in 1986. As noted, the assailant in those stabbings was never apprehended. No direct evidence was adduced which tied defendant to those attacks. That Thingvold hired the person or persons who conducted those attacks is, however, a compelling inference.

A criminal complaint was filed against Raymond Thingvold in April 1987. The complaint charged that defendant had solicited George Nalan to murder his wife sometime between December 1, 1983, and April 30, 1986. At the trial, four witnesses testified that Thingvold had separately solicited each of them to commit murder. Roger Atkinson testified that between 1974 and 1976 defendant solicited him to murder defendant's first wife, Diane, in order for defendant to collect on an insurance policy. Sid Haffendon and James Wagaman both testified that defendant solicited them to murder defendant's now deceased second wife, Barbara, for the purpose of collecting insurance proceeds. According to their testimony, defendant, on separate occasions, recommended to both of them that they stab Barbara in the stomach since she had recently undergone a stomach operation. Finally, George Nalan testified that between 1983 and 1986 defendant repeatedly solicited him to kill Barbara. The State also presented two police officers who testified to the stabbing attack which Barbara sustained in April 1986.

When defendant testified, he stated that Nalan called him in March 1987 in an attempt to extort money. In response to this testimony, the trial court determined that defendant had opened the door to the full circumstances under which this phone call took place for the purpose of witness credibility. Nalan was recalled by the prosecution

and testified that he called defendant, pursuant to police instructions, three days after Barbara was murdered in an attempt to obtain incriminating statements. This was the first time the jury learned that defendant's wife had been murdered. The court instructed the jury that the testimony regarding Barbara's murder was to be used for the sole purpose of witness credibility.

On appeal defendant argued, as he did before the trial court, that the information charging him with solicitation failed to allege that the offense occurred within the period of the statute of limitations. (Ill. Rev. Stat. 1987, ch. 38, par. 3—5.) Under section 3—5, the prosecution of the offense of felony solicitation must be commenced within three years of the occurrence of the crime. The information stated that "between the dates of December 1, 1983 and the 30th of April 1986" George Nalan was solicited by defendant to murder his wife. Defendant argued that since the information failed to allege when the last act of solicitation occurred, or that any act occurred within three years of the date on which the information was filed, the information failed to properly allege that an offense occurred within the three-year statute of limitations. The appellate court concluded that the information was not fatally flawed, as it was specific enough to enable defendant to defend against the charge of solicitation and it referred to the statutory language which tolls the running of the statute of limitations until the last act in the series is committed. (Ill. Rev. Stat. 1987, ch. 38, par. 3—8.) Secondly, defendant contended that the testimony of Atkinson, and the evidence regarding the stabbing attack and the murder of Barbara, were erroneously admitted. The appellate court determined that testimony of Atkinson as to the solicitation to murder defendant's first wife, Diane, was properly admitted on the basis of illustrating a common motive. The appellate court, with Justice Reinhard dissenting, further

ruled, however, that the other-crimes evidence regarding defendant's current wife, Barbara, being stabbed in April 1986 and subsequently being stabbed to death in March 1987 was erroneously admitted.

The majority of this court concludes: (1) the information was defective since it did not allege that any of defendant's actions took place within the three-year statute of limitations; (2) the testimony of Atkinson was improperly admitted since it did not support the view that defendant was motivated to have Barbara killed for insurance proceeds; (3) the evidence regarding the April 1986 stabbing attack was improperly admitted since there was no concrete evidence linking defendant to the stabbing; and (4) the murder of Barbara was improperly admitted since this is other-crimes evidence and the issue of Nalan's credibility was not a material issue in defendant's trial for solicitation. I respectfully disagree.

In order for an information to comply with the Illinois Constitution (Ill. Const. 1970, art. I, §8), it must substantially comply with the pleading requirements of the Code of Criminal Procedure of 1963. Absolute compliance is not required. (*People v. Smith* (1984), 99 Ill. 2d 467, 470-71.) In *People v. Smith*, this court stated that an information is sufficient to withstand attack at the trial court level as long as the instrument gives notice of the elements of a charge, and specifies allegations of essential facts to enable the accused to adequately prepare a defense. *Smith*, 99 Ill. 2d at 471.

The information in the present case charged defendant with the offense of solicitation with the intent that the offense of murder be committed. Additionally, the information informed defendant that the State was basing the offense upon a series of acts performed at different times. The fact that the information did not allege a specific date on which the last act of solicitation took place, or that any of defendant's actions took place within the

previous three years, is not fatal. The information alleged the applicability of section 3—8, which tolls the three-year statute of limitations for solicitation until the last act of solicitation takes place. This necessarily implied, and put defendant on notice, that the State was basing its prosecution on the fact that an act of solicitation had taken place within the previous three years. Ultimately, the trial judge instructed the jury that to sustain a charge of solicitation the State had to prove that defendant had committed at least one act of solicitation within three years prior to being charged with the offense. Thus, defendant was able to adequately prepare a defense and was in no way prejudiced by the wording of the information.

Regarding Atkinson's testimony that defendant solicited him to commit the murder of defendant's first wife, Diane, evidence of other offenses is admissible to show motive, intent, or *modus operandi*. (*People v. Romero* (1977), 66 Ill. 2d 325, 330.) The testimony of Atkinson illustrates that defendant had a common motive and *modus operandi* for the solicitation of murder. The underlying motivation for the murder solicitations was the collection of insurance proceeds. The mere fact that defendant was attempting to persuade Atkinson to kill his first wife, rather than his second wife, which is at issue here, is not dispositive on that point. This common motive is sufficiently parallel between the prior solicitations of Atkinson and the solicitations of Nalan to allow the introduction of Atkinson's testimony. This testimony also shows defendant's *modus operandi*.

The evidence of the stabbing attack upon Barbara in April 1986 was properly admitted by the trial court. As the majority notes, in order for other-crimes evidence to be admissible, proof that defendant participated in the crime need not be beyond a reasonable doubt, but must be more than mere suspicion. In the present case, the

proof goes beyond mere suspicion. It is compelling. Given the fact that the attack occurred several weeks after defendant solicited Nalan to find someone to kill his wife, and that other evidence brought out the fact that defendant had instructed individuals to stab his wife due to her recent stomach operation, this evidence was circumstantially and inferentially relevant and admissible by the trial court.

The testimony of George Nalan that Barbara was stabbed to death is characterized in the majority opinion as other-crimes evidence. While it certainly is other-crimes evidence, as Justice Reinhard pointed out in his appellate court dissent, the testimony of Nalan as to his reasons for telephoning defendant was offered for the purposes of establishing Nalan's credibility and rehabilitating him as a witness. Nalan's testimony was the sole means by which the State could prove Nalan's motives for calling defendant. Additionally, the trial court gave the jury a protective and limiting instruction, unnecessarily so in my view, that this evidence was to be used for the sole purpose of determining witness credibility. The evidence of Barbara's murder should have been admissible in any event. In a situation such as this, where an individual has solicited and discussed the proposed murder of his spouse with numerous individuals, it is circumstantially relevant that the spouse is later killed in a fashion which correlates with one of the methods he discussed. The fact that the intended victim of a solicitation for murder scheme was subsequently attacked or murdered is relevant because it gives rise to an inference of a chain of events which naturally tend to corroborate the solicitation. Admittedly, such circumstantial evidence is prejudicial. Eyewitness testimony is also prejudicial. The test for admissibility, however, is not whether evidence is prejudicial. The test, rather, is whether the evidence is circumstantially relevant and material.

The majority, by looking at each of the above evidentiary issues separately and in isolation, has determined that such evidence was improperly admitted by the trial court. When considered as a whole, however, the compelling relevance of such evidence is apparent. Standing alone, a credible argument can be made for exclusion of separate items of evidence. However, considered in the light of the totality of the chain of evidence and the linkages that are demonstrated, the pieces fall into place. To determine if evidence is relevant, the evidence must be viewed in "light of logic, experience and accepted assumptions as to human behavior." *Marut v. Costello* (1966), 34 Ill. 2d 125, 128.

A forest is made up of individual trees. If a person were called on to prove the existence of a forest, he might do so by presenting evidence of individual trees until a sufficient number of trees had been identified so that reasonable men would conclude that the existence of a forest had been proven. It would not be a valid evidentiary objection that this oak tree or that walnut tree was not a forest. It would be necessary to view the evidence in its totality to determine the existence of the forest. The fact that 2,000 trees considered individually are not a forest does not militate against the fact that considered collectively they are. Similarly, in the case at hand, the individual items of evidence that the slain wife, Barbara, was twice subjected to murderous stabbing attacks and that the defendant had solicited the murder of a former wife would not, standing alone and in isolation, be evidence that defendant was guilty of the instant charge of soliciting the murder of his second wife, Barbara. But, as with the illustration in the case of the forest, when all of the evidence in this case is considered in its totality, including testimony that the defendant had solicited Barbara's murder and had recommended stabbing as the preferred method, the linkages

are clear and the circumstantial inferences are compelling.

The defendant in this case had a fair trial. He was justly convicted of the solicitation of the murder of his wife, Barbara. That he is also guilty of Barbara's actual murder by a hired assassin unknown can hardly be doubted. However, he was not charged with her murder. He was charged and convicted of solicitation to commit murder. This conviction should be affirmed.

Accordingly, I respectfully dissent from the decision of the court.